**RUONA et al. v. FITZPATRICK et al.**

Civ. A. No. 135.

United States District Court
D. Rhode Island.

March 27, 1953.

J. Alfred Anderson, Fitchburg, Mass., for plaintiffs.

Francis D. McManus and Harry Goldstein, Asst. City Sols., Providence, R. I., for defendants.

LEAHY, District Judge.

This is an action by numerous alleged heirs of one Thomas Rone, who died intestate in the City of Providence, Rhode Island, in 1789, and is brought against said City of Providence and Walter F. Fitzpatrick, City Treasurer, to recover certain funds which the plaintiffs allege are being unlawfully withheld from them by the defendants.

The jurisdiction of the court is based on diversity of citizenship of the parties, under the provisions of 28 U.S.C.A. § 1332.

In the complaint, as amended, the plaintiffs allege in substance that Thomas Rone, also known as Thomas Roan, Thomas Roen, and Tuomas Ruona, died in Providence on March 25, 1789 without known heirs, leaving personal property and real estate; that one of the parcels of real estate was situated on the northerly side of Broad Street, in the City of Providence; that in the year 1808 the Town

Treasurer of the Town of Providence took possession of said real estate; and that subsequently the Town of Providence and later the City of Providence leased and rented said premises and collected the rents and income thereof as trustees for the benefit of the heirs of said decedent. ' The plaintiffs further allege that in the year 1872 the defendant City petitioned the Supreme Court of the State of Rhode Island for leave to sell said property; that after a hearing was held thereon, said Court, on December 18, 1872, granted a decree authorizing the City of Providence to sell said property; and that pursuant to said decree the City Treasurer of the City of Providence sold this property at public auction on the 28th day of September 1880, leaving as net proceeds of the sale the sum of $16,148.44, which sum was held by the city and was entered to the credit of said Rone Estate on the books of the city in the City Treasurer's office. The plaintiffs further allege that the defendants are still holding said sum and accrued interest thereon as trustees for the heirs of said estate; and that the plaintiffs are the heirs of said estate and are therefore entitled to said monies and accrued interest thereon and to the rents and proceeds of said property while the same was rented, leased, and used by the defendant city. The plaintiffs further allege that the plaintiffs and their ancestors, on May 17, 1897, and again on July 16, 1941, presented to the city council of the defendant city an account of their claim, which the defendants disallowed. The plaintiffs then commenced this action in which they seek a judgment against the defendants in the sum of $16,-148.44 plus interest thereon from October 6, 1880, and an accounting by the defendants, and distribution to the plaintiffs, of all the income, rents, uses and profits received by the defendants from said premises prior to that date.

In their answer the defendants admit that in 1808 the Town Treasurer of the Town of Providence took possession of certain real estate in said town allegedly belonging to the late Thomas Rone who had died without known heirs, and that said town and city leased and rented said real estate at various times between 1808 and September 28, 1880, when the property was sold. But the defendants deny that said town or city or its treasurers leased or rented said premises, or collected the rents or income thereof, as trustees for the benefit of the heirs of said Thomas Rone, and allege that they are without knowledge or information sufficient to form a belief as to whether said land formerly belonged to said Thomas Rone, or whether plaintiffs are the heirs of said Thomas Rone. The defendants deny that the plaintiffs are entitled to the monies or accrued interest alleged in their complaint to be due them, and also deny that the plaintiffs are entitled to the rents or proceeds claimed by them, or to an accounting thereof.

The answer of the defendants further sets forth six special defenses to the plaintiffs' claim. The parties have agreed, however, with the consent of the Court, that a hearing would first be held only on the issue as to whether or not the plaintiffs are the heirs at law of Thomas Rone, and that a determination on the various legal questions raised by the defendants' special defenses would be temporarily postponed. Accordingly, this matter was heard by the Court simply on the issue of identity, namely, whether or not the plaintiffs can establish their allegation that they are the heirs at law of the Thomas Rone who died in Providence on March 25, 1789, and whose property was taken over by the City of Providence.

The plaintiffs contend that their ancestor Tuomas Ruona left Finland about the year 1756; that he arrived in this country shortly thereafter; that he settled in the City of Providence; changed his name to Thomas Rone; married Amy Williams, and purchased certain real estate from Barnard and Mary Eddy; and that he died in the City of Providence on March 25, 1789, without known heirs. The plaintiffs explain the presence in Providence on March 18, 1754 of a Thomas Rone, who was on that date apprenticed to Barnard and Patience Eddy, by asserting that there were two Thomas Rones in the City of Providence—one who was apprenticed to a Barnard Eddy whose wife was named

Patience, and the other, plaintiffs' ancestor, who purchased the real estate in question from a Barnard Eddy whose wife was named Mary, and died owning said real estate, but without known heirs.

The defendants contend that no competent evidence has been introduced to prove that the plaintiffs' ancestor Tuomas Ruona ever came to America; that the name Ruona ever became Rone in America; or that any Thomas Rone, other than the one who was apprenticed to Barnard and Patience Eddy, ever lived in Providence or purchased this real estate from Barnard and Mary Eddy.

■■ The plaintiffs have the burden of proving their relationship as heirs at law of the Thomas Rone who died in the City of Providence on March 25, 1789. Morgan v. State, 1943, 69 R.I. 129, 31 A.2d 429. The rule in such matters requires the plaintiffs to prove their title by the strength of their own evidence and not by the weakness of the adversary's evidence. Morgan v. State, supra.

■ In an attempt to substantiate their claim, the plaintiffs have introduced in evidence several documents and the testimony of an expert witness. One of the documents, plaintiffs' exhibit 9, is a copy of a record book from a Finnish Court. This record appears to have been made in 1887, with the purpose of establishing the relationship of Thomas Rone and Margaretha Horneborg as brother and sister, and with the additional purpose of perpetuating certain testimony. One of the deponents relates that Margaretha had told him that her brother Thomas "had gone to a sea journey and remained on that trip and had not since given any information about himself." The other deponent relates that Margaretha had told him that her brother Thomas "had left the father's home and had gone to sea and had not since given any information about himself. * * *"

Another document introduced by the plaintiffs, marked exhibit 9, is a copy of a record of a Finnish Court made in 1897, and relates to a letter sent by Tuomas Ruona, from Stockholm, Sweden, to his parents in Finland. The letter states that

it was written by "Tuomas, Martin's son", who writes that he was born at the Ruona Estate, in Finland, in 1738, and that "I have been working at Ship Harbor building ships I left home 1756 from Kuortone Ruona Estate May 18, now I am leaving for England and to America if I have luck. * * * I do not know of my coming back I am leaving for a long journey Good Bye Written by my own hand."

Other documents introduced by the plaintiffs in evidence consist of an affidavit and two letters by one Matts Krivonen, who, at the time of writing, was a resident of Clancey, Montana, but who has since deceased, having died one year before this action was commenced. The letters in question were written to the plaintiffs' attorney, and the gist of these letters and the affidavit is to the effect that the writer at one time read a letter from Tuomas Ruona to his sister, Margaretha, which letter was written from Providence, Rhode Island, in the year 1780.

The plaintiffs also rely on a Master's Report, which was filed in the Supreme Court of the State of Rhode Island on December 14, 1872 by Thomas C. Greene, who had been appointed as a Master in Chancery to render a report to the Court of "all the facts relative to said Thomas Rone and his decease, and his title to said estate in the possession of the City and Town of Providence since the year 1808." This Report had been ordered by the Court in connection with the city's petition for leave to sell the Rone Estate, and there was stated therein, among other things, "that by common repute said Rone was a Swede by birth."

In addition to this documentary evidence, the plaintiffs introduced the testimony of an expert witness who testified as to the etymology of the name Rone. It appears that in the 1500's the name was Röne; that it then became Rööna; later Roona; and in the early 1700's Ruona. The name at the present time is spelled R-U-O-N-A.

The above evidence substantially represents the proof of the plaintiffs in support of their claim that t. / are the heirs at law of the Thomas Rone who died in

Providence, Rhode Island, in 1789, possessed of certain real estate. The Court, however, is not impressed by the probative value of this evidence which the plaintiffs have introduced. The statements contained in plaintiffs' exhibit 8, relating to depositions taken in Finland in 1887, mean nothing more than that a Tuomas Ruona left his home in Finland and that his sister Margaretha never heard from him thereafter.

Plaintiffs' exhibit 9 is of little more probative value. It relates to a deposition taken in Finland in 1897, and pertains to a copy of a letter written by one "Tuomas, Martin's son." The letter itself is not signed; nor is it dated. It states that the writer knew that he was born at the Ruona Estate in 1783. It is certainly unusual for a son writing to his parents to tell them when and where he was born. The document introduced in evidence indicates that the original letter was lost and that this is a copy of the letter. One of the persons testifying in that proceeding as to the existence of the original letter signed the Court record with her mark. Apparently she was unable to write, and it is not unreasonable to conclude that neither could she read. Furthermore, none of the witnesses in that hearing appears to have been subjected to cross-examination as to the accuracy and truthfulness of his statements.

The plaintiffs apparently rely on this letter as proof that their ancestor came to America. But the letter merely states that he was leaving Stockholm for England and to America "if I have luck". The letter itself is not sufficient proof that Tuomas Ruona ever left Stockholm; or if he did leave Stockholm, that he ever arrived in England; or if he did arrive in England, that he ever left there; or if he left England, that he ever arrived in America; or if he did arrive in America, that he came to Providence, Rhode Island.

In an effort to bridge this gap in proof, the plaintiffs have introduced the letters and the affidavit of Matts Krivonen to the effect that he saw a letter from Tuomas Ruona which had been mailed from Providence, Rhode Island. According to the affidavit, that letter was written in the Finnish language; was dated from Providence, Rhode Island, U. S. A., about 1780, and was signed Tuomas Yrjönä Martin Poika Ruona Kuortanoelta. It is worthy of note that no mention of any letters written from America by Thomas Rone appears to have been made in either of the two court proceedings in Finland, or in connection with the claim made by the plaintiffs or their ancestors to the City of Providence in 1897. Furthermore, the plaintiffs' evidence to the effect that Tuomas Ruona's sister, Margaretha, never heard from her brother, after he left Stockholm, appears to substantially contradict the plaintiffs' evidence that a letter was sent to Margaretha from Thomas Rone in America. In addition, the letters of Matts Krivonen and his affidavit, which together constitute the only evidence connecting the Thomas Rone of Providence, Rhode Island, with Margaretha Horneborg, of Finland, are not of the quality of proof necessary to establish the point for which they have been introduced. The letters are typewritten in Finnish, and are not signed. In both of Mr. Krivonen's letters to plaintiffs' attorney he states that he does not know what date was on the letter from Thomas Rone, whereas in his affidavit he states that the letter was dated from Providence about 1780. In the statement that "Thomas Rone was a sailor, and shipwright," the words "and shipwright" appear to be added to the affidavit with a different typewriter. Furthermore, although this affidavit appears to have been originally dated in 1927, it was not executed until December 28, 1931.

The plaintiffs lay considerable stress on the Master's Report already referred to, especially the portion which states "that by common repute said Rone was a Swede by birth." The statements by the Master in regard to Thomas Rone appear to be based upon a conversation between the Master and one William E. Richmond, Esq., of the City of Providence, who, as indicated by the Report, was 86 years old at that time. It thus appears that Richmond was not more than three years old at the time of Rone's death. Under this circumstance, no weight can be given to Richmond's statements, as reported by the Master, that "he well remembers said Thomas Rone; that he

saw him quite frequently when he, Rone, was a boy. * * *" Since the Master's determination "that by common repute said Rone was a Swede by birth" also appears to be based on his conversation with Richmond, it would seem that little weight can be given to that determination.

The plaintiffs have also attempted to show that the name Rone and Ruona are the same name, the latter spelling being that used at the present time for what used to be the name Rone. But the plaintiffs' witness on this point testified on cross-examination that the name Rone had already become Ruona by the turn of the eighteenth century, prior to the time when Thomas Rone was born.

The defendants have introduced considerable evidence, consisting of testimony and numerous documents, which discredits the plaintiffs' theory that the Thomas Rone who died in Providence in 1789 was the Tuomas Ruona who left Kuortane, Finland, for Stockholm about the year 1756. The defendants introduced the testimony of an expert witness who testified that there was no mail service from the Colonies to Europe during or about the year 1780. This fact casts some doubt as to the existence of a letter from Thomas Rone to his alleged sister during that period.

The defendants introduced the testimony of another expert witness who testified that the name Rone was not uncommon in America during the 1700's and that the name in this country is Scotch-Irish in origin.

The defendants introduced documentary evidence showing that on February 18, 1754 the town council of Providence voted that an Indenture be executed which would bind Thomas Roan, "who is a poor orphan boy chargeable to said Town of Providence" as an apprentice to Barnard Eddy and his wife Patience Eddy of Swansea, Massachusetts. An Indenture of Apprenticeship was thereupon executed whereby the Eddys agreed to teach Thomas Roan the trade of a shipwright and to instruct him and care for him until he attained the age of twenty-one years. This Indenture of Apprenticeship recites that Thomas Roan was to become of age on March 1, 1767, which would indicate that he was born on March 1, 1746, and that he was less than eight years of age at the time when his apprenticeship commenced. The plaintiffs admit that this Thomas Roan, apprentice, was not their ancestor.

The defendants have also introduced evidence showing that in 1761 said Barnard Eddy submitted a bill to the Colony of Rhode Island for the work of rebuilding the Weybosset Bridge. This bill lists all the persons who worked on this project, and includes the name of Thomas Rone, now spelled R-O-N-E, whereas in the Indenture of Apprenticeship the name had been spelled R-O-A-N. It should be noted, however, that although this list contains a large number of names, the name of Thomas Rone is listed with that of Barnard Eddy and the family of Barnard Eddy, along with his slaves; and that Thomas Rone is listed as working exactly the same number of days as Barnard Eddy. The Court is satisfied that this Thomas Rone who was working for Barnard Eddy in 1761 was the Thomas Roan who was apprenticed to Barnard Eddy in 1754.

The name Rone appears on the tax records of the Town of Providence from 1766 to 1788. It is intermittently spelled R-O-A-N and R-O-N-E, but it is clear that, since no duplication of names appears in any year, these tax records refer to the same individual. Thus, during the years from 1766 to 1788 there appears to be in the Town of Providence but one person by the name Thomas Rone or Thomas Roan who was taxed by the town.

The real estate which the plaintiffs allege belonged to their ancestor was purchased by Thomas Rone on July 2, 1771. It is not denied by plaintiffs that this was the same Thomas Rone who had married Amy Williams on May 10, 1767, two months after the termination of the apprenticeship of the Thomas Rone who was apprenticed to Barnard Eddy. In view of the fact that a Thomas Rone, who was not the plaintiffs' ancestor, is shown to have been in the Town of Providence in 1754 as an apprentice to Barnard Eddy, and that the plaintiffs have introduced no evidence showing that their ancestor was in Provi-

dence prior to 1780, it is clear that they have not sustained the burden of proving that the Thomas Rone who married Amy Williams in 1767, and who subsequently died owning the property in question, was their ancestor, and that he was not the Thomas Rone whose apprenticeship had just terminated.

Furthermore, the deed for the property in question indicates that it was purchased by Thomas Rone, shipwright, from Barnard Eddy. The plaintiffs assert that this was not the same Barnard Eddy for whom Thomas Rone had been working, since that Barnard Eddy was from Swansea and had a wife named Patience, while the property in question was purchased from Barnard Eddy, and wife Mary, of the Town of Providence, as stated on the deed. The defendants have submitted proof, however, that Barnard Eddy had moved from Swansea to Providence some time subsequent to the date of the apprenticeship indenture, and that he was later made a Freeman of the Town of Providence, as was also Thomas Rone. The fact that Barnard Eddy appears to have a wife, Mary, in 1771, whereas he had a wife, Patience, in 1754, is clearly insufficient to prove that there were two Barnard Eddys. The plaintiffs' contention that there was a Thomas Roan, not their ancestor, and a different person, Thomas Rone, their ancestor, both employed by Barnard Eddy the shipwright, and that their ancestor, Thomas Rone, purchased the property in question from a different Barnard Eddy, is certainly not supported by the weight of the evidence. It is clearly more probable that there was but one Thomas Rone and one Barnard Eddy, and that Barnard Eddy's former apprentice, Thomas Rone, subsequently purchased from him the real estate in question.

Evidence has also been introduced by the defendants to prove that during the period of time with which we are concerned an alien could not hold title to real property in Rhode Island. See Haigh v. Haigh, 1868, 9 R.I. 26. It is to be noted that no record has been found of the naturalization of any Thomas Rone. It therefore would not be unreasonable to assume that the Thomas Rone who owned this real estate was born in Rhode Island. In this connection the plaintiffs have cited a treaty which was entered into by the Government of Sweden and the Colonies permitting citizens of Sweden to hold title to property in the Colonies. But this treaty was not entered into until 1786, and was therefore not in force in 1771 when Thomas Rone became the owner of real property.

In view of all the facts in this case, the Court finds that the plaintiffs have failed to sustain the burden of proving that they are the heirs at law of the Thomas Rone who died in the City of Providence in 1789; and while the burden is not upon the defendants to determine the ownership of this estate, the Court is satisfied that the proof offered by the defendants, relative to the identity of the original owner of the property, far outweighs that offered by the plaintiffs in support of their claim.

Judgment shall be entered for the defendants.